**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EDWIN ROLANDO GARCIA AREVALO**,<br><br>Petitioner,<br><br>v.<br><br>**J.L. JAMISON**, *in his official capacity as Warden of the Philadelphia Federal Detention Center*,<br><br>Respondents. | **CIVIL ACTION**<br><br>**NO. 26-7971-KSM** |

**MEMORANDUM**

**MARSTON, J.** **October 27, 2026**

Once again, this Court considers a habeas petition brought by a noncitizen, who was abruptly confronted and arrested by officers with the Immigration and Customs Enforcement ("ICE") agency. After review and consideration of the Petition (Doc. No. 1), Respondents' opposition brief (Doc. No. 6), Petitioner's reply brief (Doc. No. 7), and the body camera footage of Petitioner's arrest on October 13, 2026, the Court finds that Petitioner's initial arrest was unlawful under the Immigration and Nationality Act ("INA"). Accordingly, Petitioner Edwin Rolando Garcia Arevalo's Petition for a Writ of Habeas Corpus (Doc. No. 1) is granted.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States without inspection approximately 20 years ago. (Doc. No. 1 at 2.) He is married with two children and owns a home in Willow Grove, Pennsylvania. (*Id.*) He has no criminal record, and it appears he had no interactions with United States Customs and Border Protection, United States Department of Homeland Security ("DHS"), or ICE prior to the October 13, 2026 arrest at issue here. (*See id.*)

At around 6:30 a.m. on October 13, 2026, ICE agents were conducting "an enforcement operation targeting Petitioner's brother," Edgar Garcia Arevalo, when they stopped Petitioner's vehicle on Davisville Road in Willow Grove, Pennsylvania. (Doc. No. 6 at 9; Doc. No. 6-1 at 3 (Form I-213).) Before the traffic stop, the officers had been surveilling the last-known address for Edgar—who was living with Petitioner in Willow Grove—when they saw Petitioner exit the home and enter the driver's side of a white Toyota. (Doc. No. 6-1 at 3.) A few minutes later, a man matching Edgar's description left the home and entered the passenger side of the Toyota. (*Id.*) The car, which appears to be a work vehicle and contains a wrap for Petitioner's tree service business, Eddy's Tree and Landscaping, LLC (*see id.*; BCF No. 1 at 2:16), then drove away from the home (Doc. No. 6-1 at 3). The agents followed and quickly initiated a traffic stop. (*Id.*)

Petitioner provided a New York driver's license to the agent who approached the driver's side window. (*Id.* at 4.) In response to questions from the agent, Petitioner admitted that he lacked legal status in the United States and that he had entered the country "through the border" in 2006. (BCF No. 1 at 2:20–3:25.) He also conceded that he had never submitted any immigration applications or paperwork to DHS. (*Id.* at 5:57–6:42.) As they continued to talk, Petitioner explained to the agent that he owned the Willow Park home the agents had been surveilling and that he lives there with his wife and two small children, both of whom were born in the United States. (*Id.* at 3:28–4:03.) Petitioner told the agent that he had allowed his brother to live with them for the last few months because he was trying to help him out and keep him from having to sleep on the street. (*Id.* at 6:49–7:02.) Petitioner had also hired his brother to work for his tree service company. (*Id.* at 7:18–7:25.)

After a few minutes, the agent speaking with Petitioner left the driver's side of the car to speak with someone who appears to be an ICE supervisor. (*Id.* at 7:57–8:30.) The agent relayed what Petitioner had told him, including that Petitioner owns the tree service company advertised on the car and that he had hired his brother to work for him. (*Id.* at 7:57–8:10.) The supervisor noted that Petitioner's brother had provided a "fake green card" as identification and then gestured toward Petitioner stating, "he's good to go too, he's got nothing, so we're going to take both." (*Id.* at 8:12–8:23.) The agent responded, "And he basically told me he entered in 2006 illegally but never applied for anything." (*Id.* at 8:23–8:29.) Both men then walked back toward Petitioner, confirmed with Petitioner that his wife and kids live at the home they had been surveilling, and then asked him to step out of the car. (*Id.* at 8:30–8:50.) As he was placed in handcuffs, the supervisor explained that he would be given "paperwork" later that day. (*Id.* at 8:50–8:55.)

At the supervisor's direction, the agent then returned to his own work vehicle and filled out a Form I-200 Warrant for Arrest of Alien, using the information contained on the New York license that Petitioner produced. (*Id.* at 9:30–11:52.)[1] On the blank line for "File No.," the agent wrote "TBD." (BCF No. 1 at 12:20–12:32.)[2] The agent then served the warrant on Petitioner, explaining that it was an "administrative warrant, not a criminal warrant" and it was for "being in

---

[1] The New York license listed a New York address for Petitioner. (Doc. No. 6-1 at 4.) According to the Form I-213 Record of Deportable/Inadmissible Alien that was completed after the arrest, agents later found a Guatemalan identification card for Petitioner that included a Pennsylvania address, yet it was not the address of the Willow Grove home. (*Id.* at 4.) It does not appear that the agents had the Guatemalan identification card when completing the Form I-200 at the scene. (*See generally* BCF No. 1 (referencing only the New York license prior to serving the warrant).)

[2] "File No." refers to a non-citizen's unique Alien Registration Number or "A-Number," which is tied to a non-citizen's "A-File." *See* A-Files Numbered Below 8 Million, https://www.uscis.gov/records/genealogy/historical-record-series/a-files-numbered-below-8-million (last accessed Oct. 26, 2026). An A-File "contain[s] all the agency's records" for the noncitizen. (*See* Doc. No. 6-1 at 2 (listing Petitioner's A-Number).)

the United States illegally." (*Id.* at 12:37–13:20.) The agent also explained that they would "do more paperwork" once they returned to the ICE field office in Philadelphia, that Petitioner would receive copies of the paperwork, and that ICE agents would explain everything that was happening to him along the way. (*Id.* at 13:09–13:20.)

After Petitioner was taken into custody, deportation officers completed various forms related to the incident, including: (1) a Form I-862 Notice to Appear, which charges Petitioner as removable under Section 212(a)(6)(A)(i) of the INA for being present in the United States without being admitted or paroled (Doc. No. 6-3); (2) a Form I-213 Record of Deportable/Inadmissible Alien (Doc. No. 6-1), which summarizes Petitioner's biographical details, entry information, and immigration history; (3) an electronically generated Form I-200 Warrant for Arrest of Alien, which, unlike the handwritten warrant prepared at the scene, lists Petitioner's A-Number; and (4) a Form I-286 Notice of Custody Determination, which explains that the agent made a custody determination and concluded that Petitioner would be detained pending the outcome of his removal proceedings (Doc. No. 6-4). With respect to this final form, Petitioner has requested review by an immigration judge, and the redetermination hearing is set for October 29, 2026 at 1:00 p.m. (Doc. No. 6-4 at 2; Doc. No. 6-5 at 2.) All four forms were served on Petitioner the same day as his arrest. (Doc. No. 6 at 7.)

Three days later, on October 16, 2026, Petitioner filed the instant Petition (Doc. No. 1); however, Petitioner's counsel failed to serve the Petition on Respondents until October 19, 2026. Between the filing of the Petition and the completion of service, Petitioner was transferred from the Federal Detention Center in Philadelphia to the Moshannon Valley Processing Center in Philipsburg, Pennsylvania, where he remains detained. (Doc. No. 6 at 11.)

## II. PROCEDURAL HISTORY

As noted above, Petitioner seeks a writ of habeas corpus and an order for his immediate release. (Doc. No. 1.) Petitioner argues that habeas relief is warranted because Petitioner's arrest and continued detention are in violation of the Due Process Clause of the Fifth Amendment, the prohibition against unreasonable seizures contained in the Fourth Amendment, the INA, and the Administrative Procedure Act ("APA"). (*See generally* Doc. Nos. 1, 7.) Respondents oppose the Petition, arguing that the Court should deny habeas relief because: (1) Petitioner's initial stop and arrest were lawful; (2) his continued detention is authorized by § 1226(a), ICE made an initial custody determination, and Petitioner has not exhausted available administrative remedies; (3) the custody procedures afforded Petitioner satisfy due process; and (4) Petitioner's APA claim rests on incorrect factual and legal premises and supplies no alternative basis for relief. (Doc. No. 6 at 12.) The Court has reviewed the parties' arguments, the immigration forms for Petitioner submitted by Respondents, and the body camera footage that was recorded during Petitioner's arrest. The Petition is thus ripe for resolution.

## III. DISCUSSION

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Under that provision, a federal district court is authorized to grant a writ of habeas corpus to a petitioner who is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). The petitioner carries the burden of showing his detention violates the Constitution or federal law. *Id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Petitioner argues that habeas relief is warranted here because, among other reasons, he was arrested pursuant to an invalid warrant and the agents lacked probable cause to justify a warrantless arrest. (Doc. No. 7 at 12–

18.[3]) The Court agrees that Petitioner's arrest was unlawful under the INA and its enabling regulations.[4]

The INA provides that "[o]n a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). "The plain language of the statute requires a warrant for arrest and detention." *Vasquez Cruz*, 2026 WL 3182469, at *3. The INA's implementing regulations confirm that "immigration officials may arrest and detain a noncitizen 'under the authority' of a Form I-200 warrant '*at the time of issuance* of the notice to appear, or any time thereafter and up to the time removal proceedings are completed.'" *Id.* (quoting 8 C.F.R. § 236.1(b)(1)) (alteration adopted). Courts in the Third Circuit and around the country have read these provisions to mean that a Form I-200 warrant is invalid unless issued at or after the issuance of a notice to appear. *See, e.g.*, *id.* ("Section 1226(a) authorizes the detention of noncitizens pending the outcome of their removal proceedings. An NTA initiates those removal

---

[3] Generally, "this Court is not required to consider legal arguments raised for the first time on reply." *Lopez Cruz v. Jamison*, No. 26cv2278, 2026 WL 1257329, at *6 (E.D. Pa. May 7, 2026); *see also Calderon v. Noem*, No. 25cv2136, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025) ("It is well-settled that a habeas petitioner cannot amend his petition – much less introduce wholly new claims – in his reply brief.") (cleaned up). But because the material evidence—the body camera footage and immigration paperwork—were only produced as part of Respondents' opposition brief, the Court will consider the arguments made for the first time on reply in this case.

[4] As this Court previously explained, *see Reyes Torres v. Mullin*, No. 26cv7439, 2026 WL 3084994, at *5 n.9 (E.D. Pa. Oct. 15, 2026), we agree with other judges in this Court that a claim challenging the Petitioner's initial arrest is cognizable through a Section 2241 habeas petition and need not be exhausted, *see, e.g.*, *Vasquez Cruz v. Jamison*, No. 26cv7784, 2026 WL 3182469, at *2–3 (E.D. Pa. Oct. 23, 2026) (finding claims for statutory construction need not be exhausted, and in the alternative, that exhaustion was futile because the petitioner's statutory and constitutional challenge to his initial arrest was "not a claim that he can make to an Immigration Judge because it is not a claim about whether he merits release from custody during removal proceedings"); *Lopez Lopez v. Jamison*, No. 26cv7618, 2026 WL 3094744, at *2 (E.D. Pa. Oct. 16, 2026) ("Respondents did not detain Petitioner pursuant to a valid Form I-200 Warrant, so requiring a bond hearing at this posture would be futile in remedying Petitioner's current unlawful and invalid detention."); *Dos Reis v. McShane*, No. 26cv3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) ("A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it.").

proceedings. It therefore follows that without an NTA, removal proceedings are not pending, and there is no basis to issue a warrant to detain a noncitizen pursuant to Section 1226(a).") (collecting cases); *Lopez Lopez*, 2026 WL 3094744, at *3 ("When these provisions [8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b)(1)] are taken together, they indicate that 'DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA.'") (quoting *Vladimir G. v. Easterwood*, No. 26cv2971, 2026 WL 1786418, at *2 (D. Minn. June 22, 2026)); *Loaeza v. Bausch*, __ F. Supp. 3d__, No. 26cv945, 2026 WL 2150155, at *1–2 (W.D. N.Y. July 27, 2026) ("[A]s a matter of pure statutory law, Respondents only have the authority to arrest and detain a noncitizen under § 1226(a) if removal proceedings against the noncitizen are 'pending.'").

Here, Respondents completed and served Petitioner with the Form I-200 warrant while at the scene of his arrest. (*See* Doc. No. 6 at 7 ("[O]fficers promptly prepared and served an administrative warrant at the scene."); Doc. No. 6-1 at 4 (explaining that a "Warrant for Arrest was issued, and [Petitioner] was taken into custody and served his warrant" before being transported to ICE's field office in Philadelphia for processing).) But Petitioner was not served with a notice to appear until later that day. (Doc. No. 6 at 10; *see also* BCF No. 1 at 12:20–12:32 (writing "TBD" in the blank for Petitioner's A-Number).) Because the warrant was issued *before* the notice to appear, the warrant is invalid and cannot justify Petitioner's arrest. *See Vasquez Cruz*, 2026 WL 3182469, at *3 ("It is undisputed then that ICE arrested and detained Mr. Vasquez Cruz on a Form I-200 warrant before DHS issued an NTA. . . . ICE therefore subjected Mr. Vasquez Cruz to an unlawful arrest based on an invalid warrant."); *Lopez Lopez*, 2026 WL 3094744, at *3 (holding that "the handwritten Form I-200 Warrant that was issued at the scene of Petitioner's arrest before he was in removal proceedings is invalid").

That does not end the inquiry, however, because ICE agents also have some authority to act without a warrant. *See* 8 U.S.C. § 1357(a). Section 1357(a) provides them with the "power without a warrant—(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States; and (2) . . . to arrest any alien in the United States, if [the agent] has *reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest." *Id.* (emphases added); *see also Vasquez Cruz*, 2026 WL 3182469, at *4 ("The law thus requires that immigration officers make two separate, distinct determinations to make a warrantless arrest under Section 1357(a)(2). They may not base a warrantless arrest on removability alone."). The "reason to believe" standard in this context has been found to be equivalent to a probable cause analysis. *See Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979) (noting that other courts have "held the statutory requirement that an officer have 'reason to believe' a person is an illegal alien before he may arrest him without a warrant must be interpreted as coterminous with the fourth amendment's requirement of probable cause"); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (collecting non-Third Circuit decisions). And the analysis of probable cause "turns on what the arresting officer knew at the time they took the individual into custody." *Lopez Lopez*, 2026 WL 3094744, at *5.

Here, the agents' authority to stop Petitioner and initially interrogate him under Section 1357(a)(1) is not in dispute. And it is clear from the body camera footage that Petitioner, upon very brief initial questioning from the agents, admitted that he is a citizen of Guatemala who is in the United States illegally, thus satisfying the first prong of Section 1357(a)(1). (*See* BCF No. 1 at 2:20–3:25.) The only dispute is the second prong of Section 1357(a)(2): whether the agents believed that Petitioner was likely to escape before a warrant could be obtained. As to this

question, the record does not support a finding that the agents had "reason to believe" that Petitioner was "likely to escape before a warrant could be obtained for his arrest." *Lopez Lopez*, 2026 WL 3094744, at *6 (quoting 8 U.S.C. § 1357(a)(2)) (alterations adopted).

"Courts interpret 'likely to escape' as 'likely to evade detention by immigration officers.'" *Vasquez Cruz*, 2026 WL 3182469, at *4 (quoting *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026)). The immigration officers making this determination are "trained to consider the totality of circumstances." *Id.* Here, Respondents argue that the agents had probable cause to believe Petitioner was a flight risk because: (1) he was "driving a vehicle leaving a house under surveillance for suspicion that a noncitizen without lawful status resided there"; (2) he presented a New York license listing a New York address; (3) the officers located a Guatemalan identification card listing a Philadelphia address; (4) Petitioner lacked work authorization; and (5) Petitioner had not registered an address with immigration authorities. (Doc. No. 6 at 15.) None of these arguments persuade.

For one, the fact that Petitioner was traveling with his brother, who was the subject of an enforcement action, says nothing about *Petitioner's* likelihood to flee. *See Lopez Lopez*, 2026 WL 3094744, at *6 ("The Court notes that it is starting to see a troubling pattern of individuals being 'mistakenly' identified as targets by ICE and investigated without reasonable suspicion merely for being in proximity to other unnamed, ambiguous targets."); *cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.") (internal citations omitted). For another, the body camera footage shows the agents had only the New York license when they

arrested Petitioner. Because they had not yet discovered the Guatemalan identification card, it cannot support a finding of probable cause. *See Lopez Lopez*, 2026 WL 3094744, at *5 (explaining that the analysis of probable cause "turns on what the arresting officer knew at the time they took the individual into custody"); *Alameda Juarez v. Mullin*, No. 26cv7008, 2026 WL 2981947, at *3 (E.D. Pa. Oct. 5, 2026) ("Information that an officer learns after an arrest cannot justify a warrantless arrest, as an officer cannot form a belief about probable cause based on information they do not know.") (quoting *Tabora-Brizuela v. Mullen*, No. 26cv7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026)).

That leaves Petitioner's New York driver's license, which reported a New York address, and the lack of a work authorization or registered address for Petitioner with immigration authorities. Although these facts may be sufficient to support a finding of probable cause in certain situations, *see Reyes Torres v. Mullin*, No. 26cv7439, 2026 WL 3084994, at *2, *5 (E.D. Pa. Oct. 15, 2026), here, when they are considered in conjunction with the totality of circumstances, the Court finds the agents did not have probable cause to believe Petitioner was a flight risk. Tellingly, when the agents arrested Petitioner, they knew that he owned the home they had recently been surveilling, and he lived there with his wife and two young children, both of whom are American citizens. Although the address on Petitioner's New York license did not match the Willow Grove home, there is nothing to suggest that the ID was fake (unlike the ID given to the agents by his brother). Instead, it appears to simply be an old address. The agents also knew that Petitioner had no criminal history, had resided in the United States for the past twenty years, owned his own business and was driving to work when he was pulled over—all facts which suggest Petitioner had established community ties. Finally, we note that Petitioner was cooperative with the agents throughout the encounter and truthfully answered their questions

without hiding his illegal status. Each of these facts weighs strongly against any finding of probable cause. *See Vasquez Cruz*, 2026 WL 3182469, at *5 ("Mr. Vasquez Cru[z] has two young daughters of whom he is the sole custodian, he is gainfully employed, and he maintains a consistent place of residence. These facts show that he enjoys ties to his community, which counsels against finding him a flight risk. There is also no evidence that he attempted to flee the ICE officers, refused to follow their commands, or evaded their questions during his interrogation and arrest. This further weighs against deeming him likely to escape.") (internal citations omitted); *Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (explaining that district courts across the country consider multiple factors, such as whether the noncitizen "(1) was arrested near his home; (2) lacked a known criminal history at the time of his arrest; (3) answered questions posed to him by ICE without incident or evasion; (4) was working in the area; (5) had a stable residence with a spouse, fiancé, and children; (6) had children or other family with proper immigration status; (7) was linked to altered identity documents; (8) had past attempts to flee; and (9) lacked ties to the community, such as family, home, or a job").[5]

Because the agents did not have probable cause to find Petitioner was a flight risk, they were not authorized to execute a warrantless arrest under Section 1357(a)(2). And because Petitioner's arrest was not pursuant to a warrant or a finding of probable cause, it violates the

[5] The circumstances presented here are thus a far cry from those presented in a case recently decided by this Court. Although there the petitioner was also "in the driver's seat of a truck on a residential street" at the time of his arrest and had avoided any interactions with DHS or ICE in the six years he was present in the country, he notably did "not have any direct familial ties to the United States," and his own counsel described him as "a true earwig, a ghost if you will." *Reyes Torres v. Mullin*, No. 26cv7439, 2026 WL 3084994, at *2, *5 (E.D. Pa. Oct. 15, 2026).

INA. This is sufficient grounds for habeas relief. *See Alameda Juarez*, 2026 WL 2981947, at *3; *Tabora-Brizuela*, 2026 WL 2908095, at *3.[6]

## V. CONCLUSION

Because Petitioner's arrest was not supported by a warrant or the probable cause required for a warrantless arrest under Section 1357(a)(2), his arrest was unlawful. The Petition is granted. An appropriate order follows.

[6] Because the Court finds this provides a sufficient basis for granting habeas relief, we need not consider Petitioner's additional arguments under the Constitution, other provisions of the INA, and the APA.